EDWARD R. JORDAN, Petitioner-Appellee, v. MICHAEL A. GLAUB *et al.*, Respondents-Appellants.

First District (2nd Division) No. 1—90—0342

Opinion filed March 30, 1990.

Paul Stralka and James R. Stopka, both of Chicago, for appellant.

Edward R. Jordan, of Wheeling, appellee *pro se*.

JUSTICE SCARIANO delivered the opinion of the court:

Respondent appeals from an order of the circuit court which reversed a decision of the Cook County Officers Electoral Board sustaining respondent's objections to the nominating papers of petitioner as a candidate for judge of the circuit court of Cook County in the March 20, 1990, primary election.

Petitioner is seeking to place his name on the ballot for the March 20, 1990, primary election to fill the vacancy in the office of resident circuit judge created by the resignation of the Honorable Dean Trafelet, who had been elected from the suburban portion of the Cook County judicial circuit. Respondent maintains that petitioner's nominating petitions for this position are legally insufficient, because some of the signers and circulators of the petitions reside inside the City of Chicago and not in its Cook County suburbs. We affirm.

To be placed on the primary election ballot, prospective judicial candidates must collect the signatures of at least 500 qualified voters. Petitioner collected the signatures of 506 voters, of which approximately 116 reside within the corporate limits of Chicago and the balance in the suburban portion of the Cook County judicial circuit. Thirty signatures were obtained on a petition circulated by a resident of Chicago.

Respondent filed a timely objection to petitioner's nominating papers with the Cook County Officers Electoral Board (Board), alleging that the signatures were insufficient. The Board found the papers invalid and ordered petitioner's name to be omitted from the ballot. Petitioner appealed to the circuit court of Cook County, which reversed the Board's decision and made the following findings: (1) Cook County comprises one judicial circuit; (2) the statute controlling this dispute is section 7—10(h) of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 7—10(h)), as written before the enactment of Public Act 86—786; and (3) *Kozel v. State Board of Elections* (1988), 168 Ill. App. 3d 501, 522 N.E.2d 908, *vacated and appeal dismissed on procedural grounds* (1988), 126 Ill. 2d 58, 533 N.E.2d 796, although lacking precedential value, is persuasive authority.

Respondent filed a timely notice of appeal to this court on January 22, 1990, and on February 13, 1990, we granted his motion to place his appeal on an accelerated docket. On March 13, 1990, we heard and decided this case from the bench and entered an appropriate order citing that our opinion would follow.

Article VI of the Illinois Constitution provides in pertinent part as follows:

> "§2. JUDICIAL DISTRICTS
> *** The First Judicial District consists of Cook County. ***
> * * *
>
> §7. JUDICIAL CIRCUITS
> (a) The State shall be divided into Judicial Circuits consisting of one or more counties. The First Judicial District shall constitute a Judicial Circuit. *** The General Assembly by law may provide for the division of a circuit for the purpose of selection of Circuit Judges and for the selection of Circuit Judges from the circuit at large.
> (b) *** In the First Judicial District, unless otherwise provided by law, Cook County, Chicago, and the area outside Chicago shall be separate units for the selection of Circuit Judges ***." Ill. Const. 1970, art. VI, §§2, 7.

Section 1 of "An Act relating to the circuit courts" (Ill. Rev. Stat. 1987, ch. 37, par. 72.1) states that "[t]he county of Cook shall be one judicial circuit." Exercising its constitutional authority to divide the judicial circuits into political units for the selection of circuit judges, in 1978 the Illinois legislature provided that a vacancy in the office of a resident circuit judge, as defined in section 1.1 of "An Act relating to vacancies in the office of judge" (Ill. Rev. Stat. 1987, ch. 37, par. 72.41—1) (hereinafter Judicial Vacancies Act), shall be

filled in the following manner:

"(4) The County of Cook shall have 83 resident judges. Twenty-seven of those resident judges shall be elected from the unit comprised of the territory of the Circuit Court of Cook County outside the corporate limits of Chicago and 56 resident judges shall be elected from the unit within the corporate limits of Chicago. A vacancy in the office of resident judge of the Circuit Court of Cook County shall be filled from the unit in which it occurs." (Ill. Rev. Stat. 1987, ch. 37, par. 72.42(4).)

Furthermore, "[w]hen a vacancy in the office of resident circuit judge is filled by election, the election shall be for the appropriate county or unit, and not for the entire circuit." Ill. Rev. Stat. 1987, ch. 37, par. 72.42—1.

In 1989, the legislature mandated the division of the Cook County judicial circuit into 15 subcircuits, which the "General Assembly shall create *** by law on or before July 1, 1991, using population data as determined by the 1990 Federal census." (Pub. Act 86—786, §2, eff. Sept. 6, 1989 (amending Ill. Rev. Stat. 1987, ch. 37, by adding par. 72.2e).) Preserving the old city/suburban division for the interim period, the legislature stated further that "[a] vacancy in the office of resident judge of the Circuit of Cook County occurring before the date the subcircuits are created by law *** shall be filled from the unit within Chicago or the unit outside Chicago, as the case may be, in which the vacancy occurs." Pub. Act 86—786, §3 (amending Ill. Rev. Stat. 1987, ch. 37, par. 72.42).

In the present case, because the Honorable Dean Trafelet was a resident circuit judge elected from the suburban unit of the Cook County judicial circuit, his successor must be elected by qualified voters residing in that same unit.

As noted above, respondent's crucial contention on appeal is that the circulators and signers of the nominating petitions of a prospective candidate for this suburban judicial vacancy must also reside in that portion of Cook County which lies outside the corporate limits of Chicago. The Illinois General Assembly recently divided Cook County into smaller election units for the purpose of selecting judges for the courts of that circuit and district. (See Pub. Act 86—786 (amending Ill. Rev. Stat. 1987, ch. 37, pars. 25, 72.2, 72.42, 160.2; ch. 46, par. 7—10; and adding ch. 37, par. 72.2e).) However, until the new "subcircuits" are created, the statute governing judicial nominating petitions (Pub. Act 86—786, §5 (amending Ill. Rev. Stat. 1987, ch. 46, par. 7—10(h)) (the Election Code)) clearly and unambiguously provides that the entire Cook County judicial circuit is fair territory for collecting

signatures for all types of judicial vacancies occurring within the circuit.

The newly amended section 7—10 of the Election Code provides as follows:

"[A] petition [for nomination] shall be signed by qualified primary electors residing in the *political division* for which the nomination is sought \*\*\*. \*\*\* At the bottom of each sheet of such petition shall be added a statement signed by a registered voter of the *political division* for which the candidate is seeking a nomination \*\*\*. \*\*\*

\* \* \*

Such petitions for nominations shall be signed:

\* \* \*

(h) If for a candidate for judicial office, by at least 500 qualified primary electors of his or her judicial district, subdistrict, *circuit*, or subcircuit, as the case may be." (Emphasis added.) Pub. Act 86—786, §5 (amending Ill. Rev. Stat. 1987, ch. 46, par. 7—10).

The only change in the amended version of section 7—10 is the addition of the words "subdistrict" and "subcircuit" in subsection (h) thereof. Respondent attaches undue significance to these terms, arguing that "subcircuit" refers to the old division of the Cook County judicial circuit into city and suburban political units. Such an interpretation is clearly unwarranted in view of the legislative mandate to divide Cook County into five "subdistricts" for appellate court elections and 15 "subcircuits" for circuit court elections after the 1990 census. (See Pub. Act 86—786, §§1, 2.) Although for the purposes of this appeal the result would be the same whether we applied the old or the amended version of subsection 7—10(h), the amended version took effect on September 6, 1989 (Pub. Act 86—786, §6), before the circulation period for nomination petitions began (see Pub. Act 86—786, §5 (amending Ill. Rev. Stat. 1987, ch. 46, par. 7—10); Ill. Rev. Stat. 1987, ch. 46, par. 7—12(1)); therefore, contrary to the finding of the circuit court, the amended version controls this case.

The circuit court relied on the reasoning of *Kozel v. State Board of Elections* (1988), 168 Ill. App. 3d 501, 522 N.E.2d 908, *vacated and appeal dismissed on procedural grounds* (1988), 126 Ill. 2d 58, 533 N.E.2d 796, wherein the Fourth District Appellate Court ruled that subsection 7—10(h) of the Election Code (Ill. Rev. Stat. 1987, ch. 46, par. 7—10(h)) was unambiguous and allowed a prospective candidate for La Salle County resident judgeship to collect signatures for his nomination from the entire judicial circuit embracing three counties.

The court reasoned that by permitting circuit-wide circulation the statute "allows less populated counties to have multiple candidates in primaries where the 500-signature requirement would otherwise preclude it, or to have a candidate at all in counties where one or the other of the parties is predominant." (168 Ill. App. 3d at 503, 522 N.E.2d at 909.) Although both aspects of this rationale lose their force in a judicial circuit as densely populated as Cook County, the court's reasoning does not strip subsection 7—10(h) of its plain meaning. Indeed, as the supreme court stated in *Kozel*, "with respect to circuit court judgeships, the statute makes no distinction between candidates for resident positions, who run only within their county, and candidates for at-large positions, who must run throughout their circuit." (126 Ill. 2d at 62, 533 N.E.2d at 798.) Similarly, the statute makes no distinction between the Cook County judicial circuit and other circuits; accordingly, we agree with the circuit court that the appellate opinion in *Kozel* is persuasive in the present case.

 Respondent also maintains that the term "political division" as it is used in section 7—10 with respect to the residency requirements for signers and circulators of nominating petitions refers to the city and suburban election units of Cook County. A thorough reading of the section, however, makes it clear that "political division" is a general term which embraces all of the various types of specifically identified electoral enclaves enumerated in subsections 7—10(a) through 7—10(k), such as congressional districts, county board districts, municipalities, townships, wards, sanitary districts, precincts, counties, etc. (See Pub. Act 86—786, §5.) Thus, when subsection 7—10(h), which governs all judicial elections, requires the signatures of "at least 500 qualified primary electors of his or her judicial *** *circuit*," it means just that. (Emphasis added.) (Pub. Act 86—786, §5 (amending Ill. Rev. Stat. 1987, ch. 46, par. 7—10(h)).) Moreover, if the legislature had meant to refer to the city and suburban election units in subsection 7—10(h), it would have used the term "unit" as it did in sections 72.41—1, 72.42—1, and amended section 72.42 of the Judicial Vacancies Act. (See Ill. Rev. Stat. 1987, ch. 37, pars. 72.41—1, 72.42—1; Pub. Act 86—786, §3 (amending Ill. Rev. Stat. 1987, ch. 37, par. 72.42).) Although section 7—10 is part of the Election Code, both that section and section 72.42 of the Judicial Vacancies Act were amended together with Public Act 86—786.

 Respondent finally contends that the circulators of petitioner's judicial nominating petitions must also be residents of the suburban portion of the Cook County judicial district. As noted above, 30 of petitioner's 506 nominating signatures were obtained by a resident of

the City of Chicago. As we read section 7—10, the residency qualifications of both signers and circulators are substantially the same: signers must be "qualified primary electors residing in the *political division* for which the nomination is sought," and circulators must be "registered voter[s] of the *political division* for which the candidate is seeking nomination." (Emphasis added.) (Pub. Act 86—786, §5 (amending Ill. Rev. Stat. 1987, ch. 46, par. 7—10).) We determined above that the relevant political division for signers of judicial nominating petitions is the appropriate judicial "circuit." Although the statute does not specifically identify the corresponding electoral enclave for circulators, since the general term "political division" is used in the statute for both signers and circulators, we hold that the relevant political division with respect to petition circulators is also the appropriate judicial "circuit;" accordingly, we find that petition circulators for candidates for resident judgeships in the Cook County judicial circuit may reside anywhere within the circuit.

For all of the above reasons, we hold that petitioner's nomination papers are legally sufficient and affirm the order of the circuit court.

Affirmed.

DiVITO, P.J., and HARTMAN, J., concur.